## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | Criminal No.    1:25-CR- 195 (MAD) |
| | ) | |
| **v.** | ) | **Plea Agreement** |
| | ) | |
| **CHRISTOPHER SNYDER,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

The United States of America, by and through its counsel of record, the United States

Attorney for the Northern District of New York, and defendant **Christopher Snyder** (hereinafter

"the defendant"), by and through the defendant's counsel of record, hereby enter into the following

plea agreement pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure:

1)      **The Defendant's Obligations:**

a)   **Guilty Plea:** The defendant will waive indictment and plead guilty to Count 1 of the

information in Case No. 1:25-CR- 195 (MAD) charging conspiracy to commit wire fraud, in

violation of 18 U.S.C. §§ 1349 and 1343.

b)   **Special Assessment:**   The defendant will pay an assessment of $100 per count of

conviction pursuant to 18 U.S.C. § 3013.  The defendant agrees to deliver a check or money

order to the Clerk of the Court in the amount of $100, payable to the U.S. District Court,

at the time of sentencing.

c)   **Compliance with Other Terms of Agreement:** The defendant will comply in a timely

manner with all of the terms of this plea agreement.

d) **Restitution:**

    (1) The defendant will consent to entry of an order directing the defendant's payment of restitution in full to any person or entity who qualifies as a victim of the offense of conviction under 18 U.S.C. § 3663 or § 3663A.

    (2) The defendant agrees that the judgment will order restitution to be due and payable immediately subject to any payment terms set forth by the Court at sentencing and that the Clerk of the Court may release funds to victims without undue delay upon receipt of restitution payments from the defendant.

e) **Forfeiture:** Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), the defendant will consent to entry of an order directing forfeiture to the United States of the property described in the Forfeiture Allegation in the information described above, or to any substitute assets, or to a money judgment, all as more fully set out below:

(1) A money judgment in amount of $233,000.

If any of the property described above, as a result of any act or omission of the defendant, either: (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with, a third party; (c) has been placed beyond the jurisdiction of the Court; (d) has been substantially diminished in value; or (e) has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p) and Fed. R. Crim. P. 32.2(e).

f) **Access to Records:** The defendant authorizes the U.S. Attorney's Office to inspect and copy all financial documents and information provided by the defendant to the U.S. Probation Office, including those provided as a part of the Presentence Investigation.  If

requested, the defendant will provide any privacy waivers, consents, or releases requested by the U.S. Attorney's Office to access records to verify the defendant's financial disclosures, and if requested will complete a further financial statement provided by the U.S. Attorney's Office as well as any supporting financial documentation to the Asset Recovery Unit of the US. Attorney's Office no later than 21 days after receiving such a request.

g) **No Transfer of Assets:** The defendant certifies that the defendant has made no transfer of assets in contemplation of this prosecution for the purpose of evading or defeating financial obligations that are created by this plea agreement and/or that may be imposed by the Court. In addition, the defendant promises not to make any such transfers in the future.

2) **The Government's Obligations:**

a) **Non-prosecution for other offenses:** For so long as the defendant's guilty plea and the sentence remain in effect, the government will not seek other federal criminal charges against the defendant based on conduct described in the information in Case No. 1:25-CR- 195 (MAD) and/or in the paragraph of this agreement entitled "Factual Basis for Guilty Plea," occurring before the date on which the defendant signs this agreement.  This agreement does not prevent the government from seeking charges based on other conduct.

b) **Compliance with Other Terms of Agreement:** The government will comply in a timely manner with all of the terms of this plea agreement.

3) **Potential Maximum Penalties:** The defendant understands that the Court can impose the following maximum penalties for the offense to which the defendant agrees to plead guilty:

a) **Maximum term of imprisonment:** 20 years, pursuant to 18 U.S.C. §§ 1349 and 1343.

b) **Maximum fine:** $250,000, pursuant to 18 U.S.C. § 3571(b)(3).

3

c) **Supervised release term:** the sentencing court may require the defendant to serve a term of supervised release of up to 3 years, to begin after imprisonment. *See* 18 U.S.C. § 3583. A violation of the conditions of supervised release during that time period may result in the defendant being sentenced to an additional term of imprisonment of up to 2 years.

d) **Other adverse consequences:** Other adverse consequences may result from the defendant's guilty plea as further described in paragraph F below.

4) **Elements of Offense:** The defendant understands that the following are the elements of the offense to which the defendant agrees to plead guilty.

a) *First*, two or more persons conspired to knowingly and willfully participated in a scheme or artifice to defraud or to obtain money or property by materially false and fraudulent pretenses, representations, or promises, with knowledge of the scheme's fraudulent nature and specific intent to defraud, and reasonably foreseeing that one or more members of the conspiracy would use, or cause to be used, the interstate wires in furtherance of the scheme to defraud; and

b) *Second*, the defendant joined that conspiracy, either at its inception or sometime during its existence, knowing the purpose of the conspiracy and intending to help it succeed.

5) **Factual Basis for Guilty Plea:** The defendant admits the following facts, that those facts demonstrate the defendant's guilt for the offense to which the defendant is pleading guilty, and that there are no facts establishing a viable defense to that offense:

a) At all times relevant to the information, Prime Capital Ventures, LLC ("Prime Capital") and Prime Commercial Lending, LLC ("Prime Commercial") were purported commercial lending businesses based in Albany, New York. Kris Roglieri, a resident of Warren County, New York, was the Chief Executive Officer and sole member of both entities. Co-

Conspirator-1, a resident of Virginia, was Executive Vice President of Prime Capital. The defendant, a resident of Virginia, worked for both companies, sometimes holding himself out as the "COO," or Chief Operating Officer, of Prime Commercial.

b) Between at the latest June 2023 and January 2024, the defendant, Roglieri, and Co-Conspirator-1 conspired to defraud Prime Capital's borrower clients and prospective borrower clients out of millions of dollars by making false representations and promises about lending arrangements.

c) As part of the fraudulent scheme, the conspirators first asked a prospective borrower to sign a letter of intent ("LOI") and pay fees to Prime Capital for due diligence that Prime Capital claimed to perform while it assessed the borrower's project and purportedly secured financing for that project. Prime Capital typically charged a due diligence fee of $25,000 to $75,000 per project.

d) Following Prime Capital's receipt of a due diligence fee, and if a borrower continued to be interested in obtaining a loan from Prime Capital, Prime Capital signed a line of credit agreement with the borrower and obtained an upfront interest payment from or for the benefit of the borrower while promising to start funding the borrower's loan within a certain amount of time. This upfront interest payment was characterized by Prime Capital as the "Interest Credit Account Payment," or "ICA" payment for short. ICA payments did not represent fees to Prime Capital; instead, each borrower's ICA payment was to be debited over time as a loan was funded and accrued interest. Depending on the size of the loan that Prime Capital promised, an ICA payment could be in the millions of dollars; Prime Capital obtained ICA payments as large as $20 million. Prime Capital promised that an ICA payment would be kept in a distinct account and would be fully refundable if the

contemplated loan did not materialize. As Roglieri explained it to one prospective borrower during a recorded call in December 2023:

> So with our process, um, we usually require anywhere from 20 to 30 percent down based on the total capital stack . . . We call that essentially the ICA, the Interest Credit Account. Um, we require that down payment, um, in the form of cash . . . . Number one, the ICA is considered essentially additional collateral for the loan throughout the term . . . Number two, it acts as pre-paid interest reserves, um, so theoretically the client never has to make a payment to us on a quarterly or monthly basis when that money gets deposited in an account that we control in our name . . . the client such as [] gets a statement every month or every quarter showing how much was drawn down and the interest that is due on that and that is essentially how we get paid back . . . . There really isn't any risk. The [ICA] money gets put into a pledged account.

e) As the defendant knew by June 2023 at the latest, Prime Capital had been unsuccessful in securing loans for its borrowers and prospective borrowers since its founding in December 2021. The defendant also knew that Prime Capital was using ICA payments paid by newer borrower clients to partially fund loans to, or to refund ICA payments to, older borrower clients, contrary to Prime Capital's promises that ICA payments would be kept in distinct or pledged accounts and would be used only for the benefit of the borrower that made the ICA payment. The defendant also knew that Prime Capital was drawing on unearned ICA payments to pay him, to pay Co-Conspirator-1, and to enrich Roglieri.

f) As an example, on August 9, 2023, the defendant and Co-Conspirator-1 exchanged the following text messages:

| Sender | Message |
|---|---|
| Co-Conspirator-1 | Fuck |
| Co-Conspirator-1 | 350 is not coming |
| Snyder | At all?? |
| Snyder | Shit |
| Snyder | Why? |
| Co-Conspirator-1 | Bc [a borrower]'s investor wants to look over all docs |
| Co-Conspirator-1 | And said it will take a couple of days |

| Co-Conspirator-1 | We need it for [a different borrower] today |

In these messages, Co-Conspirator-1 expressed alarm because a $350,000 ICA payment from a prospective borrower was delayed and Prime Capital needed that money to fund a loan to a different borrower.

g) As another example, the defendant and Co-Conspirator-1 exchanged the following text messages on September 19, 2023:

| Sender | Message |
| --- | --- |
| Co-Conspirator-1 | If we don't get a closing in today |
| Co-Conspirator-1 | It's over |
| Co-Conspirator-1 | Nothing we can do anymore |
| Snyder | We gotta start selling some stuff off so we can pay our bills. I need cash. |
| Snyder | Is there any point in having the csll [call] w [a prospective borrower] today then? He won't be able to wire today |
| Co-Conspirator-1 | Doubtful |
| Co-Conspirator-1 | It killed us when no LOIs [letters of intent] or closings happened |
| Co-Conspirator-1 | Everyone requested ICA and dds [due diligence fees] back |
| Co-Conspirator-1 | And we can't come back from it |
| Co-Conspirator-1 | There are [law]suits all over |
| Co-Conspirator-1 | Kris threw in the towel |

In these messages, Co-Conspirator-1 explained that Prime Capital could not meet its obligations to its existing borrower clients because it had no funds – either due diligence fees or ICA payments – coming in from new borrower clients.

h) Nonetheless, the defendant worked with Roglieri, Co-Conspirator-1, and others to find new borrower clients and solicit due diligence fees and ICA payments from those borrowers based on false representations that Prime Capital could secure loans for them and false promises that a borrower's ICA payment would be fully refundable if a loan did not materialize. The defendant drafted LOIs, line of credit agreements, and other documents for new borrower clients to sign, and regularly communicated with existing borrower

clients and their representatives about why Prime Capital was not funding loans as promised, all while knowing that Prime Capital had no ability to fund loans and was misusing ICA payments.

i) For instance, in December 2023, Roglieri and Co-Conspirator-1 fraudulently sought and obtained a $5 million ICA payment from 1800 Park Avenue LLC ("1800 Park"), a Minnesota company that sought Prime Capital's assistance in obtaining a loan. 1800 Park made this ICA payment based on the false promise from Roglieri that the funds would be kept in a "separate and distinct account" and would be "refundable" if Prime Capital and 1800 Park did not enter into an agreement for an approximately $100 million line of credit. The defendant – knowing that Prime Capital could not fund the promised line of credit and that Prime Capital had repeatedly used ICA payments from new borrower clients to partially fund loans to or refund ICA payments to older borrower clients – prepared contractual paperwork between Prime Commercial and 1800 Park to facilitate Co-Conspirator-1 and Roglieri's scheme. The defendant continued working on these documents even after Co-Conspirator-1 told him by text message, on December 19, 2023, "Prime [Capital] just got forced into involuntary bankruptcy."

j) On December 22, 2023, after Roglieri and 1800 Park signed a contract prepared by the defendant, 1800 Park transferred the $5 million ICA payment to a Prime Capital account at KeyBank controlled by Roglieri. Roglieri then transferred, stole, and fraudulently used the funds by initiating wire transfers over the Internet from his home in Warren County, New York, to KeyBank servers in Ohio. These transfers included:

- On December 22, 2023, $950,000 was transferred to an existing Prime Capital client based in Saratoga County, New York, as partial loan funding for the client's real estate project.

- On December 22, 2023, $2 million was transferred to a credit union account held by a Virginia company owned by an associate of Co-Conspirator-1. Between January and April 2024, Co-Conspirator-1's associate drew on these funds to wire $66,500 to the defendant.

k)  During the defendant's involvement in the conspiracy, approximately 18 victim borrowers paid Prime Capital and Prime Commercial $40,892,304.50 in due diligence fees and ICA payments based on false representations about Prime Capital's ability to secure funding and false promises that ICA payments would be refundable. Bank accounts in the defendant's name received $615,500 in fraud proceeds, a portion of which was transferred to Co-Conspirator-1.

6)  **Sentencing Stipulations:**

a)  The parties agree that the base offense level is 7, pursuant to U.S.S.G. § 2B1.1(a)(1).

b)  The parties agree that the offense involved a loss of more than $25 million but less than $65 million, resulting in a 22-level increase pursuant to U.S.S.G. § 2B1.1(b)(1)(L).

c)  The parties agree that the offense involved more than 10 victims, resulting in a 2-level increase pursuant to U.S.S.G. § 2B1.1(b)(2)(A)(i).

d)  The parties agree that the defendant was a minor participant within the meaning of U.S.S.G. § 3B1.2(b), resulting in a 2-level decrease.

e)  The government will recommend a 2-level downward adjustment to the applicable federal sentencing guidelines offense level pursuant to U.S.S.G. § 3E1.1(a) if, (i) through the time of sentencing, the government is convinced that the defendant has demonstrated "acceptance of responsibility" for the offense(s) to which the defendant is pleading guilty and all relevant conduct, as defined in U.S.S.G. § 1B1.3; and (ii) the government does not determine that the defendant, after signing this agreement, committed any other federal,

state, or local crimes, or engaged in conduct that constitutes "obstruction of justice," as defined in U.S.S.G. § 3C1.1.

f) The government will move for a 1-level downward adjustment to the applicable federal sentencing guidelines offense level pursuant to U.S.S.G. § 3E1.1(b) if the government is convinced that the defendant has accepted responsibility within the meaning of U.S.S.G. § 3E1.1(a) and further assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the defendant's intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, and the defendant otherwise qualifies for such adjustment by having a combined offense level of 16 or more before receipt of any acceptance of responsibility adjustment under U.S.S.G. § 3E1.1(a).

7) **<u>Waiver of Rights to Appeal and Collateral Attack:</u>** The defendant waives (gives up) any and all rights, including those conferred by 18 U.S.C. § 3742 and/or 28 U.S.C. §§ 2241 and 2255, to appeal and/or to collaterally attack the following:

a) The conviction resulting from the defendant's guilty plea;

b) Any term of imprisonment of 87 months or less;

c) Any sentence to a fine within the maximum permitted by statute;

d) Any sentence to a term of supervised release within the maximum permitted by statute;

e) Any condition of supervised release on any ground (including procedural or substantive unreasonableness) that the defendant did not raise in the District Court despite both (i) notice in the presentence investigation report that the Probation Office had recommended the condition and (ii) an opportunity to object in the District Court;

f) Any order of forfeiture or restitution imposed by the Court that is consistent with governing law and is not contrary to the terms of this agreement; and

g) Any special assessment permitted by statute.

Nothing in this appeal waiver is meant to be or should be construed as a representation of or agreement concerning the appropriate sentence in this case. The Government and the defendant agree that this waiver applies regardless of whether any term of imprisonment is imposed to run consecutively to or concurrently with, in whole or in part, the undischarged portion of any other sentence that has been imposed on the defendant at the time of sentencing in this case. If the court imposes a term of imprisonment at or below the number of months specified above, the defendant's waiver of appeal and/or collateral attack includes any claim of procedural or substantive error in the determination or imposition of the term of imprisonment. If the court imposes a term of supervised release and/or a fine within the maximum permitted by statute, the defendant's waiver of appeal and/or collateral attack includes any claim of procedural or substantive error in the determination or imposition of the term of supervised release and/or fine. The defendant further waives the right to raise on appeal or on collateral review any claim that (a) the statutes to which the defendant is pleading guilty are unconstitutional and (b) the admitted conduct does not fall within the scope of the statutes. The defendant does not waive the right to raise a claim of ineffective assistance of counsel in an appeal or collateral attack on his conviction and sentence.

---

A. **<u>Right to Counsel:</u>** The defendant has the right to be represented by counsel—and if necessary have the court appoint counsel—at trial and at every other stage of the proceeding. Defense

counsel has advised the defendant of nature of the charges to which the defendant is agreeing to plead guilty and the range of possible sentences.

B. **<u>Waiver of Trial-Related Rights:</u>** The defendant has the following additional constitutional rights in connection with the charges in this case: (i) to be presumed innocent until proven guilty beyond a reasonable doubt; (ii) to plead not guilty; (iii) to trial by jury; (iv) to confront, cross-examine, and compel the attendance of witnesses at trial; (v) to present defense evidence; and (vi) to remain silent and be protected against compelled self-incrimination.  The defendant understands that by pleading guilty, the defendant waives (gives up) these rights.

C. **<u>Court Not Bound by Plea Agreement:</u>** This plea agreement is made pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure.  The Court is neither a party to, nor bound by this Plea Agreement.  The Court may accept or reject this Plea Agreement or defer a decision until it has considered the Presentence Investigation Report prepared by the United States Probation Office.  If the Court rejects the provisions of this agreement permitting the defendant to plead guilty to certain charges in satisfaction of other charges, the Court will permit the defendant to withdraw the plea of guilty before sentencing, pursuant to Fed. R. Crim. P. 11(c)(5) & (d).

D. **<u>Court Not Bound by Agreed-Upon Recommendations, Stipulations, and Requests:</u>** If this agreement contains any provisions under Fed. R. Crim. P. 11(c)(1)(B) by which the government agrees to recommend, stipulates, or agrees not to oppose the defendant's request, that a particular sentence or sentencing range is appropriate or that a particular provision of the federal sentencing guidelines, or a policy statement, or sentencing factor does or does not apply, such a recommendation, stipulation, or request does not bind the Court, which may make independent factual findings by a preponderance of the evidence and may reject such

recommendations, requests, and stipulations between the parties. If the Court rejects one or more recommendations, stipulations, or requests, the defendant is not entitled to withdraw the defendant's plea of guilty and is not released from the obligations described in this agreement. Under such circumstances, the government reserves the right to support and defend, in connection with any post-sentencing proceedings, any decision the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations, stipulations, or requests set out in this agreement.

E. **Sentencing:**

a. **Maximum terms of imprisonment:** The defendant understands that the Court has discretion to impose a sentence within the statutory maximum sentence(s) set out in this agreement. If the defendant is pleading guilty to multiple charges, the Court may be required by law to have the sentences of imprisonment on the convictions resulting from those charges run consecutively to each other. Otherwise, the Court has discretion to have sentences of imprisonment run concurrently or consecutively. *See* 18 U.S.C. § 3584.

b. **Sentencing guidelines:**

i. The actual sentence to be imposed upon the defendant is within the discretion of the sentencing Court, subject to the statutory maximum and mandatory minimum penalties, as described above, and the provisions of the Sentencing Reform Act and the United States Sentencing Guidelines promulgated thereunder. While the Court is not bound to impose a sentence within the applicable sentencing guidelines range, it must take into account the sentencing guidelines, along with the other factors set forth in 18 U.S.C. § 3553(a).

ii. Any estimate of the defendant's offense level, criminal history category, and sentencing guidelines range provided before sentencing is preliminary and is not binding on the parties to this agreement, the Probation Office, or the Court. Until the Probation Office has fully investigated the defendant's criminal history, it is not possible to predict with certainty the defendant's criminal history category and, in some cases, the defendant's offense level.

iii. Under certain circumstances, the defendant's criminal history may affect the defendant's offense level under the federal sentencing guidelines. If the presentence investigation reveals that the defendant's criminal history may support an offense level different than an offense level stipulated in this agreement, the parties are not bound by any such stipulation as to the defendant's offense level and may advocate with respect to how the defendant's criminal history affects the offense level.

c. **Factual findings:** The defendant understands that the sentencing Court may make factual findings with respect to any and all sentencing factors and issues, including those referenced in the United States Sentencing Guidelines, whether or not such factors or issues have been admitted by the defendant or stipulated by the parties. In making those findings by a preponderance of the evidence, the Court may consider any reliable evidence, including hearsay. The Defendant understands that the sentence imposed may be determined based upon such judicial fact-finding.

d. **Use of the Defendant's Statements:** The defendant understands that the sentencing court may consider any statement that the defendant has made or makes in this Plea Agreement, during the guilty plea, to the Probation Office, and at sentencing when imposing sentence. In addition the government may be able to use the defendant's statements in this agreement

and at the guilty plea and at sentencing in any criminal, civil, or administrative proceeding. For example, if the defendant fails to enter a guilty plea (as required by this agreement) or the defendant's guilty plea is later withdrawn or vacated for any reason other than the Court's rejection of this Plea Agreement under Fed. R. Crim. P. 11(c)(5), the government may introduce the defendant's statements into evidence in any prosecution. If, however, the Court rejects this Plea Agreement under Fed. R. Crim. P. 11(c)(5), and the defendant withdraws the guilty plea pursuant to Fed. R. Crim. P. 11(d)(2)(A), the government will not be permitted to use any of the defendant's statements in this Plea Agreement. To the extent that Rule 11(f) of the Federal Rules of Criminal Procedure and/or Rule 410 of the Federal Rules of Evidence are inconsistent with this paragraph, the defendant waives (gives up) any protections under those rules.

e. **Government's Discretion to Recommend a Sentence:** Unless a stipulation in this agreement explicitly limits the government's discretion with respect to its recommendations at sentencing, this agreement does not prevent the government from urging the sentencing Court to find that a particular offense level, criminal history category, ground for departure, or guidelines range applies; from recommending a specific sentence within the applicable guidelines range as determined by the Court or as urged by the government; or, if the government deems appropriate, recommending that the Court impose a sentence above the applicable guidelines range.

f. **Sentencing-Related Information:** The government has the right to advise the sentencing Court and the Probation Office of any information, in aggravation or mitigation of sentencing, whether or not encompassed within the count(s) to which the defendant has agreed to plead guilty, subject only to the limitation described in U.S.S.G. §1B1.8. No

stipulation in this plea agreement limits the obligations of both parties to ensure that the sentencing Court has all information pertinent to its determination of an appropriate sentence. The parties may provide any factual information relevant to sentencing to the Probation Office and/or to the Court, without limitation, before or after the completion of the Presentence Investigation Report. The parties agree that the submission of such information shall not be deemed "advocacy" in violation of any stipulation in this plea agreement.

g. **Supervised Release Term and Conditions:** If the defendant is placed on supervised release, under some circumstances, including the defendant's violation of one or more supervised release conditions, the Court may extend the term of supervised release, and may modify, reduce, or enlarge the conditions of such release.

F. **Other Adverse Consequences:** The following are some examples of the adverse consequences of pleading guilty other than the sentence imposed by the Court, along with any judicial order of forfeiture and/or restitution:

a. Conviction of a felony may result in the loss of civil rights, including, but not limited to, the right to vote and the right to possess firearms.

b. A felony conviction may adversely affect the defendant's ability to hold certain professional licenses and may impair the defendant's ability to do business with federal, state, and local governments or to receive benefits from such governments.

There may be other adverse consequences as well, some of them unforeseeable. It may be difficult or impossible to predict all of the adverse consequences of the defendant's guilty plea. The defendant agrees that any resulting adverse consequences, whether or not

foreseen or foreseeable, will not provide a basis for withdrawing from the guilty plea described in this agreement or otherwise challenging the resulting conviction and sentence.

G. **Restitution:** Independent of any agreement to pay restitution, and whether there is any such agreement, the sentencing Court may be required to order that the defendant pay restitution to any victim of the offense(s) of conviction under the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A. In addition, the sentencing Court may have the authority to order that the defendant pay restitution to any victim of the offense(s) of conviction pursuant to 18 U.S.C. §§ 3663 & 3664. In any case involving a conviction for a sexual exploitation offense in chapter 110 of title 18 of the United States Code, the Court must order restitution for the full amount of the victim's losses as determined by the court. The victim's losses include, but are not limited to medical services related to physical, psychiatric, or psychological care; physical or occupational therapy or rehabilitation; necessary transportation, temporary housing, and child care expenses; lost income; attorney's fees and other costs; and any other losses suffered by the victim as a proximate result of the offense. The restitution payment will be in addition to any other civil or criminal penalty authorized by law.

H. **Forfeiture:** If the defendant has agreed to forfeiture of assets, the defendant agrees to the following terms and conditions:

a. The defendant hereby forfeits, to the United States, all right, title, and interest of any nature in any and all assets that are subject to forfeiture, including substitute assets, as set forth above, whether those assets are in the possession or control of the defendant, a nominee, or some other third party.

b. The defendant consents to the entry of an order of forfeiture of the assets described above.

c.  The defendant is aware that pursuant to Rule 32.2(b)(4)(A) of the Federal Rules of Criminal Procedure, a preliminary order of forfeiture becomes final as to a given defendant at sentencing or at any time before sentencing if the defendant consents.  The defendant consents that the preliminary order of forfeiture in this case shall become final as to the defendant before sentencing, as of the date the preliminary order of forfeiture is entered by the Court.  The defendant understands that the government, upon entry of the preliminary order of forfeiture, will address any potential third party claims pursuant to Rule 32.2(c), and seek to finalize forfeiture.

d.  Forfeiture of the defendant's assets will not satisfy all, or any portion of, a fine, restitution, or other monetary penalty that the Court may impose upon the defendant in addition to forfeiture.  Satisfaction of all, or any portion of, any restitution, fine, or other penalty that the Court may impose upon the defendant in addition to forfeiture will not satisfy all, or any portion of, any forfeiture judgment ordered by the Court.

e.  In the event that any successful claim is made, by any third party, to the assets described above, the defendant agrees to forfeit substitute assets equal in value to the assets transferred to any such third party.  The defendant agrees that forfeiture of substitute assets shall not be deemed an alteration of the Defendant's sentence.

f.  The defendant agrees to cooperate with the United States by taking whatever steps are necessary to pass clear title to the United States of any forfeitable assets, including but not limited to, surrendering title; completing any documents or legal proceedings required to transfer assets to the United States; and taking necessary steps to ensure that assets subject to forfeiture are not sold, disbursed, expended, destroyed, damaged, hidden or otherwise made unavailable for forfeiture or removed beyond the jurisdiction of the Court.

g.  The defendant waives the right to a jury trial on the forfeiture of assets.  The defendant waives all constitutional, legal, and equitable defenses to the forfeiture of assets, as provided by this agreement, in any proceeding, including but not limited to any jeopardy defense or claim of double jeopardy or any claim or defense under the Eighth Amendment to the United States Constitution, including any claim of an excessive fine.

h.  The defendant acknowledges that the government may institute civil or administrative proceedings against any or all of the defendant's forfeitable assets, including, but not limited to substitute assets and any forfeitable assets not identified by the defendant, and agrees not to contest any such forfeiture proceedings.

i.  The defendant represents and warrants that the defendant has no direct or indirect interest in any property, real or personal, or other asset subject to forfeiture by virtue of this plea agreement, other than those listed above.

j.  In the event the government determines that the defendant has breached any condition of this plea agreement, none of the forfeited property shall be returned to the defendant, nor shall the defendant assert any claim to the forfeited property.  The defendant shall not reacquire any forfeited property, directly or indirectly, through family members, nominees, friends, or associates.

**I.  Determination of Financial Condition and Payment of Interest and Penalties:**

a.  In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the defendant agrees fully to disclose all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party.

b.  The defendant will promptly submit a complete, accurate, and truthful financial statement to the United States Attorney's Office, in a form it provides and as it directs.

c.  The defendant authorizes the United States Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

d.  Interest and penalties may accrue, as a matter of law, on any unpaid financial obligation imposed as part of the defendant's sentence, from as early as the date of sentencing.

**J.  <u>Remedies for Breach:</u>**

a.  Should the government determine that the defendant, after the date the defendant has signed this plea agreement, (i) has committed any further crime or violated any condition of release or supervision imposed by the Court (whether or not charged); (ii) has given false, incomplete, or misleading testimony or information; or (iii) has moved to withdraw the defendant's guilty plea for reasons other than those described in this agreement or otherwise has breached any term or condition of this plea agreement or supplemental agreements with the government, the government will have the right, in its sole discretion, to void this agreement, in whole or in part.  In the event of such breach, the defendant will remain obligated to plead guilty and otherwise comply with the terms of this agreement and will not be permitted to withdraw the defendant's guilty plea under this agreement. The defendant will be subject to prosecution for any federal criminal violation of which the government has knowledge, including but not limited to charges that this Office has agreed to dismiss or not to prosecute under this agreement.

b.  If the defendant breaches this agreement, the government will have the following remedies, among others, available to it:

i.  To bring prosecution for any federal criminal offenses dismissed or not prosecuted under this agreement. The defendant waives (gives up) any defense or objection to the commencement of any such prosecution that is not time-barred by the applicable statute of limitations as of the date on which the defendant signed this plea agreement, notwithstanding the expiration of the statute of limitations between the signing of the agreement and the commencement of any such prosecution.

ii.  In connection with any such prosecution, any information, statement, and testimony provided by the defendant, and all leads derived therefrom, may be used against the defendant, without limitation and without regard to any rights the defendant may have under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410.

iii.  To utilize any information, statement, or testimony provided by the defendant in any proceeding, including at sentencing, notwithstanding U.S.S.G. §1B1.8;

iv.  To advocate if, and how, any particular adjustment or specific offense characteristic affects the applicable Sentencing Guidelines range without regard to any contrary stipulations contained in this agreement;

v.  To refrain from making any sentencing-related motion favorable to the defendant without regard to any provision in this agreement obligating the government to consider making or make such motion upon fulfillment of certain conditions;

vi.  To urge the sentencing Court to take the defendant's breach into account when imposing sentence;

vii.  To recommend any sentence the government deems appropriate, even if such recommendation is at odds with any stipulation in this agreement.

K. **Limitations:** This agreement is between the United States Attorney's Office for the Northern District of New York and the defendant. References to "the government" in this agreement refer only to that Office. This agreement does not bind any other federal, state, or local prosecuting authorities. Furthermore, this agreement does not prohibit the United States, any agency thereof, or any third party from initiating or prosecuting any civil or administrative proceedings directly or indirectly involving the defendant, including, but not limited to, proceedings by the Internal Revenue Service relating to potential civil tax liability, proceedings relating to the forfeiture of assets, and proceedings by the Department of Homeland Security, Bureau of Citizenship and Immigration Services relating to the immigration status of the defendant.

L. **Agreement Must be Signed; Modifications Must be Written or on the Record:** This agreement, to become effective, must be signed by all of the parties listed below. No promises, agreements, terms, or conditions other than those set forth in this plea agreement will be effective unless memorialized in writing and signed by all parties or confirmed on the record before the Court.

M. **Agreement to Plead Guilty Voluntary:** The defendant acknowledges reading each of the provisions of this plea agreement with the assistance of counsel and understands its provisions. The defendant further acknowledges that the defendant's agreement to plead guilty is voluntary and did not result from any force, threat, or promises (other than the promises in this plea agreement and any written supplemental agreements or amendments).

Docusign Envelope ID: 0D4293DF-4FD1-466B-943A-7236443BD4B1

JOHN A. SARCONE III
United States Attorney


_____        $\dfrac{5/8/25}{\text{Date}}$
Joshua R. Rosenthal
Michael Barnett
Assistant United States Attorneys
Bar Roll Nos. 700730 & 519140

_____        5/7/2025
45EAD812A40E47D...                      _____
Christopher Snyder                      Date
Defendant


_____        $\dfrac{5/7/25}{\text{Date}}$
Solomon B. Shinerock
Attorney for Defendant
Bar Roll No. 519207

23